IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**UNITED STATES OF AMERICA**

v.                                         **CRIMINAL NO. 2:19-CR-53-KS-MTP**

**GREGORY ALVIN AUZENNE**

## ORDER

For the reasons provided below, the Court **denies** Defendant Gregory Auzenne's Motion to Dismiss [157] Count 8 of the Indictment.

The Government charged Defendant Gregory Auzenne with a variety of crimes arising from an alleged scheme to defraud government health care benefit programs by marketing, prescribing, and billing for compounded medications that served no legitimate medical purpose. The Government claimed that Defendant bilked government health care benefit programs of approximately $1,766,401.06, and that he accepted illegal kickbacks and bribes as inducement to participate in the scheme.

The Court held a trial on November 9-20, 2020. The jury found Defendant not guilty on Counts 1-7 of the Indictment and hung on Count 8. On December 18, 2020, Defendant filed a Motion to Dismiss [157] Count 8. Defendant argues that by acquitting him of Counts 1-7, the jury necessarily found that he did not participate in the scheme to defraud alleged by the Government. Therefore, Defendant contends that a retrial of Count 8 would violate the Constitution's Double Jeopardy Clause.

"A re-trial following a hung jury generally does not violate the Double Jeopardy

Clause because the jury's failure to reach a verdict does not terminate the original jeopardy." *United States v. El-Mezain*, 664 F.3d 467, 551 (5th Cir. 2011). However, the Double Jeopardy Clause "precludes a retrial for any issue necessarily determined by a jury's general verdict of acquittal." *Langley v. Prince*, 926 F.3d 145, 150 (5th Cir. 2019) (citing *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469, 442-45 (1970)).

When analyzing double jeopardy claims premised on collateral estoppel, the Court must first "determine what, if anything, the jury necessarily decided in the first trial." *United States v. Cessa*, 861 F.3d 121, 140 (5th Cir. 2017). "Second, [the] court must determine whether the facts necessarily decided in the first trial constitute essential elements of the offense in the second trial." *Id.*

> [T]o determine what the jury necessarily decided following an acquittal by general verdict, the court must consider the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration. This is a practical inquiry made with an eye to all the circumstances of the proceeding. In making this determination, the court may not consider the jury's failure to reach a verdict on some counts alleged in the indictment. The defendant bears the burden of demonstrating that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding.

*El-Mezain*, 664 F.3d at 552 (punctuation and citations omitted).

In summary, the Court's task is to "determine whether the jury in the first trial rationally could have acquitted" Defendant of Counts 1-7 "without determining in his favor the issues crucial to" Count 8. *Id.* at 553. The Defendant has the burden,

2

*Dowling v. United States*, 493 U.S. 342, 350, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990), and it is "a demanding one." *Currier v. Virginia*, 138 S. Ct. 2144, 2150, 201 L. Ed. 2d 650 (2018). "A second trial is not precluded simply because it is unlikely – or even very unlikely – that the original jury acquitted without finding the fact in question." *Id.* Rather, as stated above, Defendant must demonstrate that "it would have been *irrational* for the jury in the first trial to acquit without finding in the defendant's favor on a fact essential to a conviction in the second." *Id.*

In Count 1, the Government charged Defendant with conspiring to commit wire fraud and health care fraud in violation of 18 U.S.C. § 1349. Specifically, the Government charged that Defendant conspired to formulate, produce, and prescribe compound medications based solely on the reimbursement rate per ingredient, rather than medical efficacy or the needs of beneficiaries, and that Defendant or his agent transmitted fraudulent prescriptions and reimbursement requests through interstate wire communications, all with the purpose of enriching themselves via the reimbursements provided by health care benefit programs. "The elements of a conspiracy under 18 U.S.C. § 1349 are: (1) two or more persons made an agreement to commit an unlawful act; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined in the agreement willfully, with the intent to further the unlawful purpose." *United States v. Simpson*, 741 F.3d 539, 547 (5th Cir. 2014).

In Counts 2-4, the Government charged Defendant with committing wire fraud

in violation of 18 U.S.C. § 1343. Specifically, the Government alleged that Defendant caused claims for fraudulent compounded medications to be transmitted by interstate wire communications to health care benefit programs via pharmacy benefit managers ("PBM's") in furtherance of the scheme described in Count 1. The elements of wire fraud are: "(1) a scheme to defraud; (2) the use of, or causing the use of, wire communications in furtherance of the scheme; and (3) a specific intent to defraud." *United States v. Kuhrt*, 788 F.3d 403, 413-14 (5th Cir. 2015).

In Count 5, the Government charged Defendant with violating 18 U.S.C. § 371 by conspiring to violate the Anti-Kickback Statute ("AKS"), 42 U.S.C. § 1320a-7b(b)(1)(A)-(B). Specifically, the Government alleged that Defendant conspired to solicit and receive kickbacks and bribes from Marco Moran in exchange for providing signed, blank prescriptions for compounded medications.

> To support a conspiracy conviction under 18 U.S.C. § 371, the government must prove three elements: (1) an agreement between two or more people to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the conspirators in furtherance of the conspiracy's objective.

*United States v. Fisch*, 851 F.3d 402, 406-07 (5th Cir. 2017).

In Count 6, the Government charged Defendant with soliciting and receiving kickbacks and bribes in exchange for signing prescriptions for compounded medications for which payment was made in whole or part by a federal health care benefit program, in violation of the AKS, 42 U.S.C. § 1320a-7b(b)(1)(A)-(B). In general terms, the AKS "criminalizes the payment of any funds or benefits designed to

4

encourage an individual to refer another party to a . . . provider for services to be paid for by" a federal health care benefit program. *United States v. Barnes*, 979 F.3d 283, 295 (5th Cir. 2020).

In Count 7, the Government charged Defendant with conspiring to dispense or distribute tramadol, a controlled substance, without a legitimate medical purpose and outside the usual course of professional practice, in violation of 21 U.S.C. § 846. "To prove conspiracy to . . . distribute a controlled substance, the government must show beyond a reasonable doubt (1) the existence of an agreement between two or more persons to violate narcotics laws; (2) the defendant's knowledge of the agreement; and (3) his voluntary participation in the conspiracy." *United States v. Valdez*, 453 F.3d 252, 256-67 (5th Cir. 2006).

In Count 8 – the charge on which the jury hung – the Government alleged that Defendant made false statements in connection with benefits, items, or services involving a health care benefit program, in violation of 18 U.S.C. § 1035. Specifically, the Government alleged that Defendant omitted material facts in response to an audit by Blue Cross & Blue Shield of Mississippi.

First, the Court finds that Defendant has not demonstrated that the jury's general verdicts on Counts 1-7 necessarily constitute a finding that he did not participate in the alleged scheme to defraud. Each of those counts contains at least one element unrelated to the existence of the alleged scheme to defraud. Moreover, each one contains at least one element that the Government need not prove to support

the charge in Count 8.

For example, with respect to Count 1, the jury could have found that the Government failed to prove that Defendant had the requisite intent to defraud, that the health care benefit programs in question affected interstate commerce, or that Defendant joined the conspiracy willfully. With respect to Counts 2-4, the jury could have found that the Government failed to prove that the specific interstate wire transmissions occurred, that Defendant had the requisite specific intent, or that the alleged omissions were material. With respect to Counts 5 and 6, the jury could have found that the Government failed to prove that Defendant acted knowingly and willfully, or that the payment in question – a $127,000.00 check – was related to the compounding scheme. Finally, with respect to Count 7, the jury could have found that the Government failed to prove that the tramadol prescriptions lacked a legitimate medical purpose.

The bottom line is that each element of every count was disputed at trial, leaving scores of possible rationales for the jury's verdict. "Where there is more than one possible reason for the jury's verdict, and the court without extrasensory perception . . . cannot say that any one is *necessarily* inherent in the verdict, the doctrine of collateral estoppel is inapplicable, and a second prosecution . . . is not barred." *Garcia v. Dretke*, 388 F.3d 496, 501-02 (5th Cir. 2004).

Regardless, even if the jury necessarily found that Defendant did not knowingly and willfully participate in the alleged scheme to defraud a federal health

care benefit program, it could still find him guilty on Count 8 based on the alleged cover-up. That is, a jury could rationally acquit Defendant of knowingly participating in the alleged scheme to defraud, yet find that after he discovered Moran's fraudulent activities, he made false statements in response to Blue Cross & Blue Shield's audit. The Government's factual allegations in Count 8 and the elements of the charged crime do not rely on Defendant's knowing and willful participation in the activities described in Counts 1-7.

For these reasons, the Court **denies** Defendant Gregory Auzenne's Motion to Dismiss Count 8 of the Indictment.

SO ORDERED AND ADJUDGED this 4th day of February, 2021.

/s/    Keith Starrett
KEITH STARRETT
UNITED STATES DISTRICT JUDGE